IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PAULA JEANNE HEWLETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1443 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Paula Hewlett ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on March 6, 2013 and March 20, 2013, respectively,

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

alleging a disability onset date of January 1, 2011 in both applications. (Tr. at 26, 256-66.)[2] Her applications were denied initially (Tr. at 105-34, 170-87) and upon reconsideration (Tr. at 135-66, 190-208). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 209-10.) Plaintiff, along with her attorneys, attended the subsequent hearing on December 9, 2015. (Tr. at 26.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through August 29, 2016, the date of his decision. (Tr. at 39.) On December 2, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #10].

(quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> cervical degenerative disc disease (DDD); carpal tunnel syndrome (CTS); monocular vision (left eye blind); and a bipolar disorder.

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

(Tr. at 28.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 29-30.) Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff

> has the residual functional capacity to perform work at the light exertional level. She can perform work that is consistent with monocular vision. She can perform work that does not require exposure to moving mechanical parts and high, exposed places (as defined by the Selected Characteristics of Occupations). She can perform goal-oriented rather than production-oriented work (e.g., the performance of work tasks in allotted time is more important than the pace at which the work tasks are performed.)

(Tr. at 31.) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could not perform her past relevant work. (Tr. at 36.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 36-38.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 38-39.)

Plaintiff now raises two challenges to the ALJ's decision. First, she contends that the ALJ erred by failing to include additional severe impairments at step two of the sequential analysis. Second, she argues that the ALJ erred in finding Plaintiff capable of performing a reduced range of light work, "thereby misapplying the Medical-Vocational Guidelines." (Pl.'s Br. [Doc. #13] at 3.) Having considered Plaintiff's contentions, the Court concludes that remand is necessary in this case because the ALJ failed to provide any analysis of Plaintiff's alleged lower back impairment, whether at step two or later in formulating the RFC, and the ALJ's determination is therefore insufficient to allow for meaningful judicial review.

A. Severe Impairments at Step Two

Plaintiff contends that the ALJ erred at step two of the sequential analysis by "completely failing to address multiple medically determinable impairments in the record, including chronic headaches and lumbago." (Pl.'s Br. at 10.)

> Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

Rivera v. Astrue, No. CBD-12-1095, 2013 WL 450781, at *7 (D. Md. August 22, 2013). In other words, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted). However, to render the error harmless, the ALJ must have considered all of the medical evidence at subsequent steps in the sequential evaluation. See, e.g., Stanford v. Colvin, No. 1:14CV885, 2016 WL 951539, at *4 (M.D.N.C. March 9, 2016).

In this case, the ALJ identified four severe impairments at step two of the sequential analysis: cervical degenerative disc disease, carpal tunnel syndrome, monocular vision, and bipolar disorder. (Tr. at 28.) He then categorized the following additional impairments as non-severe: obesity, hypertension, hyperlipidemia, and snapping thumb syndrome. (Tr. at 29.) The ALJ did not mention Plaintiff's lower back pain, whether as severe or non-severe. With respect to this alleged impairment, Plaintiff's medical records for 2011 through 2013 include an occasional prior diagnosis of "lumbago" with isolated references to treatment for lower back pain in October 2011 (Tr. at 456) and July 2013 (Tr. at 981-85). Then, on February 3, 2014, Plaintiff was treated at a pain management clinic with a chief complaint of low back pain radiating into her right leg, worse with standing and walking, moderate to severe in intensity. The examination revealed muscle tenderness in the lumbar region, tenderness over the lumbar vertebra, tenderness to palpation over the lumbar facet joints, and an antalgic gait. Plaintiff was prescribed Dilaudid for the pain. In concluding that treatment with narcotics was appropriate, the provider noted that "[t]he pain is causing moderate to severe impact on the quality of life and function" and that Plaintiff's "current level of pain presents . . . a high probability of severe, prolonged functional impairment." (Tr. at 683-84.) Plaintiff returned a month later on March 7, 2014, again listing low back pain as her chief complaint, unchanged from her prior visit. The examination reflects tenderness over the lumbar vertebra, tenderness to palpation over the bilateral lumbar facet joints, and an antalgic gait. She was continued on narcotic medications. (Tr. at 681-82.) Less than a month later, on March 30, 2014, she went to the emergency department, complaining of back pain and hip pain. (Tr. at 773.) A few months later, in July 2014, during a visit with her primary care provider, she reported her back

pain. (Tr. at 828.) In September 2014, at another visit with her primary care provider for low back pain, she reported that she was having spasms in her back and that the "pain patch is not working very well for that." (Tr. at 818, 820.) A month later, in October 2014, she returned to the pain management clinic for treatment of her low back pain. (Tr. at 784-85.) The next month, in November 2014, she again returned to the pain management clinic for her lower back pain, noting that it was worse with standing and walking, and moderate to severe in intensity. The examination reflected muscle tenderness in the lumbar region, tenderness over the lumbar vertebra, tenderness to palpation over the lumbar facet joints, and an antalgic gait. (Tr. at 787-88.) She returned again in December 2014 for treatment of low back pain, radiating into the right buttock, and the examination again noted tenderness in the lumbar region and an antalgic gait. (Tr. at 790-91.) The next month, in January 2015, she again returned to the pain management clinic for treatment of low back pain, radiating into the right buttock, with the examination again reflecting tenderness in the lumbar region and antalgic gait. (Tr. at 793-94.) A month later, in February 2015, she received a sacroiliac joint injection to attempt to control the pain in her hip and low back without the need for narcotic pain medication. (Tr. at 796-97, 794-95.) In June 2015, she returned to the pain management clinic again for low back pain radiating to her right buttock. (Tr. at 835.) A treatment record from her primary care provider two weeks later, on June 23, 2015, likewise reflects complaints of a backache with tenderness to palpation increased with movement, and treatment with medication. (Tr. at 888-89.) Thus, Plaintiff was treated for lower back pain at over 12 different appointments in the 2-year period prior to the hearing before the ALJ. In addition, examinations reflected tenderness in the lumbar region and, on some occasions, antalgic gait, and the low back pain

was treated with both narcotic and non-narcotic prescription medications, as well as injections. The ALJ's decision simply omits any discussion of this underlying medical evidence of lower back pain. It is not clear why the alleged impairment was omitted from the decision, as Plaintiff raised this impairment at the hearing. At the 2015 hearing before the ALJ, Plaintiff's representative noted that "[i]n talking about your pain, I know we've focused a lot on your neck. But there were some references to pain in your lower back, as well." (Tr. at 78.) Plaintiff confirmed this was the case, and testified that her lower back pain had been happening for "a year and a half or two" years prior to the hearing, that doctors had tried various treatments on her lower back including "shock therapy" (electrical nerve stimulation) and medication. (Tr. at 78-79.) Plaintiff further testified that the back pain affected her ability to be on her feet for long periods, and that she could only be on her feet for "a half hour" before she needed to sit. (Tr. at 80-81.) In addition, Plaintiff testified that the back pain affected her ability to sit, and that she could only tolerate sitting for "[a]bout an hour" at a time. (Tr. at 81.)

The ALJ did not include any of Plaintiff's contentions regarding her lower back pain in his decision, and the decision ultimately adopted an RFC of "light work" based on Plaintiff's neck impairments, but without any discussion of Plaintiff's low back pain or the alleged limitations in standing or walking in light of Plaintiff's lower back pain.

In the circumstances, the Court is compelled to find that the ALJ erred by failing to address at all Plaintiff's contentions and the relevant medical records supporting Plaintiff's allegations regarding her lower back pain. See Hudson v. Colvin, No. 7:12-CV-269-FL, 2013 WL 6839672, at *4, 8 (E.D.N.C. Dec. 23, 2013) (noting that "[i]t hardly bears repeating that an ALJ is required to consider all relevant evidence and to sufficiently explain the weight he

gives to probative evidence[,]" and stating that the ALJ's "silence regarding [relevant medical assessments] raises the question whether [the ALJ] even considered this evidence"). While the ALJ was free to give little probative weight to these omitted medical records, "he must say so and explain why." Carter v. Colvin, No. 5:12-CV-736-FL, 2014 WL 351867, at *7 (E.D.N.C. Jan. 31, 2014) (internal quotation and alteration omitted). Moreover, although the RFC includes a "light work" limitation, the ALJ did not discuss any medical evidence related to Plaintiff's lower back pain. The Court acknowledges that an ALJ's "failure to discuss every specific piece of evidence does not establish that she failed to consider it." Mitchell v. Astrue, No. 2:11-CV-00056-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) (internal quotation and alteration omitted). However, the ALJ's decision must still ultimately "reflect[] that she conducted a thorough review of the evidence before her." Id.; see also Hudson, 2013 WL 6839672, at *8 (noting that "boilerplate representations [in the ALJ's decision] that he considered all the evidence" did not alleviate the court's concerns that the ALJ failed to consider various relevant medical assessments).

The ALJ's failure to identify Plaintiff's lower back pain as a "severe" impairment at step two of the evaluation process is not harmless, since the relevant medical evidence was not addressed at any point in the evaluation process, and thus remains completely unaddressed. Indeed, even if Plaintiff's low back pain would alone be considered "non-severe," any resulting limitations should still have been addressed in some way in formulating the RFC. See Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p") ("[I]n assessing RFC, the adjudicator must consider limitations and restrictions

imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."). As previously noted in this District:

> Under 42 U.S.C. § 423(d)(2)(B), an ALJ must consider the combined effect of all physical and mental impairments when determining a claimant's disability status. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56, 59 (4th Cir.1989) (per curiam); Hicks v. Gardner, 393 F.2d 299, 301–02 (4th Cir.1968). An ALJ must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately" would be of a sufficient medical severity to constitute a "listed impairment." 42 U.S.C. § 423(d)(2)(C); accord 20 C.F.R. §§ 404.1523, 404.1526(a); see also 20 C.F.R. § 404.1525(e) (requiring ALJs to consider all impairments in combination when assessing the residual functional capacity); SSR 96–8p (same). This statutory and regulatory requirement compels the ALJ to consider the cumulative, compounding, or synergistic effect of the claimant's individual impairments instead of "fragmentiz[ing]" them or evaluating them in isolation. Walker, 889 F.2d at 50 ("It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity."); accord, e.g., DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir.1983); Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir.1974); Washington v. Comm'r, 659 F.Supp.2d 738, 745 (D.S.C.2009); Lemacks v. Astrue, No. 8:07–2438–RBH–BHH, 2008 U.S. Dist. LEXIS 110165, at *10, 2008 WL 2510087 (D.S.C. May 29, 2008), adopted by 2008 U.S. Dist. LEXIS 47350, 2008 WL 2510040 (D.S.C. June 18, 2008).... "As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effect of the impairments." Walker, 889 F.2d at 50. The ALJ must make a "particularized," or "specific and well-articulated," finding regarding the combined effect. Hines, 872 F.2d at 59 ("The ALJ must make a particularized finding on the effect of the combination of impairments." (emphasis added)); Cook v. Heckler, 783 F.2d 1168, 1174 (4th Cir.1986) (stating that the ALJ must make a "specific and well-articulated finding as to the effect of the combination of impairments" (emphasis added)). The ALJ may not merely consider each impairment in isolation.

Money v. Astrue, No. 1:08-CV-895, 2011 WL 3841972, at *8 (M.D.N.C. Aug. 26, 2011). Thus, even if Plaintiff's lower back impairments were not severe impairments at step two, that would

not preclude consideration of any limitations in combination with her other impairments in formulating the RFC.

The Court has considered the possibility that the ALJ intended to incorporate the analysis and discussion of Plaintiff's lower back pain into his analysis of Plaintiff's neck and shoulder pain. However, no such explanation was provided by the ALJ in his decision. Moreover, even if that were the ALJ's intent, the Court is still left without sufficient explanation of the ALJ's determination, as there is no explanation of the impact of Plaintiff's lower back pain and her claimed standing and walking limitations.

The Commissioner contends that the ALJ's error is harmless because Plaintiff has not presented medical evidence to establish that her low back pain significantly limited her ability to perform basic work activities and because Plaintiff's treatment history for her low back pain was "sporadic." However, the ALJ did not reach these determinations or rely on these bases in his decision. Here, Plaintiff has pointed to multiple treatment records over a 2-year period, with findings on examination and various treatments as set out above, and Plaintiff has testified that the low back pain affected her ability to sit and stand for extended periods. There is simply nothing in the ALJ's decision that addresses these contentions or describes Plaintiff's lower back pain (whether as severe or non-severe), nor does the decision address the relevant medical treatment records, or provide any analysis for completely disregarding this alleged impairment. Ultimately, the ALJ's omissions render the Court unable to meaningfully review the ALJ's decision to determine if it is supported by substantial evidence, and resolution of Plaintiff's allegations of lower back pain "would require excessive intrusion into the ALJ's domain." Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *3 (M.D.N.C. March 25,

2014).[5] As noted in Anderson, while the Court may make simple conclusions of law in finding that an ALJ's error is harmless, the Court may not "parse the administrative transcripts and make . . . dispositive findings of fact that the ALJ did not make." Id. at *4. Here, accepting the Commissioner's arguments would require the Court to do just that. Therefore, even though it may be that Plaintiff's lower back pain will ultimately be found not to be disabling, and even though it may be that the limitation to "light" work will be sufficient to account for this additional alleged impairment, remand is required so that these matters can be addressed by the ALJ in the first instance.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. # 15] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. # 12] should be GRANTED.

---

[5] In Anderson, the Court noted that "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering *post hoc* rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.' " Id. at *1 (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)). In applying this doctrine in Anderson, the Court noted that "jurisprudence on this issue is far from clear," and "this court will err on the side of caution" and avoid "excessive intrusion into the ALJ's domain." Id. at *3.

[6] Plaintiff also points to other medical treatment records, for example, for headaches, hypothyroidism, sinusitis, allergic rhinitis, right eye impairment, urinary tract infections, vertigo, right shoulder pain, chronic pain syndrome, and degenerative joint disease, that she contends were not addressed by the ALJ. However, the Court need not separately consider these issues, since all of the evidence will be before the ALJ for consideration on remand. Plaintiff also contends that her "credible testimony serves to illustrate that she is unable to work due to chronic severe pain, vision problems, and psychiatric symptoms" and that, had the ALJ found her limited to sedentary, rather than light, work, "a finding of disabled would have been directed by the Medical-Vocational Guidelines." (Pl.'s Br. at 14.) The Court need not address the adequacy of the ALJ's credibility determination in light of the conclusion that remand is necessary for the reasons set out above.

However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 12th day of February, 2018.

/s/ Joi Elizabeth Peake
United States Magistrate Judge